IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00198-PAB-STV

ARTHUR MOORE,

      Plaintiff,

v.

LITTLE, Captain, and
KYLE ROBERTS,

      Defendants.

_____

**ORDER**
_____

      This matter comes before the Court on Defendants' Motion for Summary

Judgment [Docket No. 111]. The Court has subject matter jurisdiction pursuant to 28

U.S.C. § 1331.

## I. BACKGROUND[1]

      This case arises out of plaintiff's incarceration at the Colorado State Penitentiary

("CSP"). Pursuant to an Executive Assignment Order ("EAO") issued by the Colorado

Department of Corrections ("CDOC") Office of Offender Services, plaintiff was

transferred from Sterling Correctional Facility ("SCF") to CSP on February 27, 2015.

Docket No. 111 at 3, ¶¶ 2-3. At the time of the transfer, plaintiff was housed in the

_____

      [1]The facts stated below are undisputed unless otherwise noted. Because
defendants did not file a reply brief, plaintiff's "additional disputed facts" will be deemed
undisputed for purposes of this summary judgment order. *See* Fed. R. Civ. P. 56(e)(2)
("If a party fails to properly . . . address another party's assertion of fact as required by
Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

Management Control Unit ("MCU") at SCF. *Id.* at 4, ¶ 8.[2]  Other MCU offenders were

transferred from SCF to CSP in 2015. *Id.* at 4, ¶ 7; Docket No. 119 at 5, ¶ 6.  These

transfers did not involve custody level reclassifications.  Docket No. 119 at 5, ¶ 10.

Plaintiff was not told he was moving to CSP until the morning of his transfer. *Id.*

at 5-6, ¶¶ 11-12.  He was also never offered a hearing in connection with the transfer.

*Id.* at 6, ¶ 14.  Upon arriving at CSP, plaintiff was held in twenty-three-hour-a-day

solitary confinement for a couple days.  Docket No. 119 at 6, ¶ 15.  He was then moved

to CSP's MCU, where he remained until October 15, 2015.  Docket No. 111 at 4, ¶ 11.

While housed in the MCU, plaintiff was allowed access to library services once a week;

day hall time for four hours a day, seven days a week; use of a pull-up bar and an

exercise apparatus in the day hall; the ability to request a phone when in the day hall;

the ability to retain a state-purchased television or be placed on a waiting list for a

loaned television; and the opportunity to participate in programming, such as Anger

Management, Customer Service, or GED.  Docket No. 111 at 4-5, ¶ 11.[3]  Between

October 15, 2015 and April 26, 2016, plaintiff was housed in CSP's Close Custody

---

[2]According to CDOC regulations, the MCU "provides an increased level of
housing, supervision and control to maintain prison safety and security," and "is
primarily used as a progressive management assignment for offenders progressing
from Restrictive Housing Maximum Security Status" or those "general population
offenders who have demonstrated, through their behavior, that they pose a significant
risk to prison safety."  Docket No. 111 at 7, ¶ 21 (quoting Docket No. 111-11 at 1
(CDOC regulations on the "Management of Close Custody Offenders," effective June
30, 2014)).

[3]Defendant Roberts testified that sixteen cells feed into one day hall at CSP.
Docket No. 119-3 at 6, 19:17-20:1.

Transition Unit ("CCTU"),[4] where he was permitted gym access for one hour per week; day hall time for six hours per day, seven days a week; use of a pull-up bar and exercise apparatus in the day hall; the ability to request the phone while in the day hall; and the ability to retain a television. *Id.* at 5, ¶ 12. For the duration of plaintiff's fourteen-month confinement at CSP, he was denied all access to outdoor exercise facilities, housed in a cell with lights on both inside and outside of the cell for twenty-four hours a day, and required to share indoor exercise equipment with eight other inmates at a time. Docket No. 119 at 6, ¶¶ 17, 19, 20. Additionally, plaintiff was subjected to more restrictive rules on property and phone access than he had been at SCF. *Id.* at 6, ¶¶ 18-19. After moving to CSP, his fan, hot pot, coffee maker, electric razor, lamp, watch, bathrobe, and pajamas were confiscated. *Id.*, ¶ 18. Those items were not returned to him until he transferred out of the facility fourteen months later. *Id.*

Plaintiff was never told how long he would remain at CSP. *Id.* at 7, ¶ 21. He learned he was leaving the facility on April 26, 2016, when he was transported to Buena Vista Correctional Facility. Docket No. 111 at 5, ¶ 14; Docket No. 119 at 7, ¶ 21. In 2015 and 2016, prison officials generally understood that inmates at CSP would be transferred after six months to another facility with access to outdoor recreation, at least until outdoor recreation was available at CSP. Docket No. 119 at 7, ¶ 23; Docket No. 119-2 at 12, 41:13-42:12; Docket No. 119-3 at 12, 42:25-43:9; Docket No. 119-4 at 3.

---

[4]CCTUs are "temporary assignments for close custody offenders who have exhibited behavior that warrants the opportunity to receive cognitive programming and increased interaction . . . to prepare them for placement in a less controlled environment." Docket No. 111 at 8, ¶ 24 (quoting Docket No. 111-11 at 2 (CDOC regulations on the "Management of Close Custody Offenders," effective June 30, 2014)).

However, housing supervisors at CSP did not track whether inmates remained at CSP for longer than six months at a time.  Docket No. 119 at 7, ¶ 24; Docket No. 119-3 at 14, 50:5-12.

Plaintiff initiated a *pro se* lawsuit on January 26, 2016.  Docket No. 1.  In his operative complaint, filed on August 4, 2016, plaintiff asserted violations of his rights under the Eighth and Fourteenth Amendments.  Docket No. 27.  On April 17, 2017, the magistrate judge recommended that the Court dismiss plaintiff's Eighth Amendment claims against Case Manager Regina Roberts and Captain Gary Little and allow plaintiff's Eighth Amendment claim against Kyle Roberts and his Fourteenth Amendment claim against Gary Little to proceed.  Docket No. 58.  The Court accepted the magistrate judge's recommendation on May 8, 2017.  Docket No. 60.

On July 18, 2018, defendants Kyle Roberts and Gary Little moved for summary judgment on plaintiff's remaining claims, raising the defense of qualified immunity. Docket No. 111.  Plaintiff, now represented by counsel, filed a response to defendants' motion on August 29, 2018, Docket No. 119, to which defendants did not reply.

## II.  LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotation marks omitted) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

Plaintiff asserts two claims in this lawsuit: (1) a Fourteenth Amendment

procedural due process claim against defendant Little arising out of plaintiff's transfer to CSP in February 2015; and (2) an Eighth Amendment claim against defendant Roberts based on plaintiff's inability to recreate outdoors during his confinement at CSP. *See* Docket No. 119 at 7, 11; Docket No. 114 at 2. Defendants argue that they are entitled to qualified immunity with respect to both claims. Docket No. 111 at 2.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). When a defendant asserts a qualified immunity defense, the plaintiff has a "heavy two-part burden" of establishing "(1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (internal quotation marks omitted). Failure to satisfy either prong of this test will result in a grant of qualified immunity to the defendant. *Id.* Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When evaluating a claim of qualified immunity, "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011))). "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted." *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014). Ordinarily, a right is clearly established if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." *Toevs v. Reid*, 685 F.3d 903, 916 (10th Cir. 2012) (internal quotation marks omitted). This does not require a case "*directly* on point." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted) (emphasis added). On the other hand, precedent that merely states "a general proposition of applicable law" will not make a right "clearly established" for purposes of qualified immunity. *Grissom*, 902 F.3d at 1168. A right is clearly established only if existing precedent places "the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (quoting *White*, 137 S. Ct. at 551)).

### A.  Fourteenth Amendment Claim Against Defendant Little

The Fourteenth Amendment of the United States Constitution provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. To establish a procedural due process claim, a plaintiff must demonstrate: "(1) a constitutionally cognizable liberty or property interest, (2) a deprivation of this interest, and (3) a lack of constitutionally adequate notice and a hearing." *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016).

Here, plaintiff contends that his procedural due process rights were violated when he was transferred to CSP in February 2015 without notice or a hearing. Docket

No. 114 at 2; Docket No. 119 at 8-11.  Defendant Little argues that he is entitled to

qualified immunity on this claim because plaintiff's conditions of confinement at CSP did

not give rise to a protected liberty interest under clearly established law.  *See* Docket

No. 111 at 13.[5]

While the Due Process Clause does not give inmates in state prisons "a liberty

interest in avoiding transfer to more adverse conditions of confinement," *Wilkinson v.*

*Austin*, 545 U.S. 209, 221 (2005), such an interest may arise from state policies or

regulations that "impose atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life." *Estate of DiMarco v. Wyoming Dep't of Corrs., Div.*

*of Prisons*, 473 F.3d 1334, 1339 (10th Cir. 2007) (internal brackets omitted) (quoting

*Sandin v. Connor*, 515 U.S. 472, 484 (1995)).  This standard implies that courts must

determine "the baseline from which to measure what is atypical and significant in any

particular prison system." *Id.* at 1340 (quoting *Wilkinson*, 545 U.S. at 223).  However,

the Tenth Circuit has declined to establish a rigid framework for conducting a baseline

comparison in any given case.  *See id.* at 1341-42.  Instead, courts should consider "a

few key factors, none dispositive," such as  "whether (1) the segregation relates to and

furthers a legitimate penological interest, such as safety or rehabilitation; (2) the

conditions of placement are extreme; (3) the placement increases the duration of

confinement . . . ; and (4) the placement is indeterminate" (the "*DiMarco* factors"). *Id.* at

---

[5]Defendant also argues that he was not personally involved in the decision to
transfer plaintiff to CSP and thus cannot be held liable under the Fourteenth
Amendment.  *See* Docket No. 111 at 11.  Because the Court agrees with defendant
that plaintiff did not have a clearly established liberty interest in avoiding confinement at
CSP, the Court need not reach the issue of defendant's personal involvement in the
alleged constitutional violation.

1342.

In his opposition to defendants' motion for summary judgment, plaintiff only addresses the second and fourth factors, arguing that his conditions of confinement at CSP, including the indeterminacy of his confinement, "cumulatively posed an atypical and significant hardship in relation to ordinary incidents of prison life." Docket No. 119 at 8-9. Viewed in a light most favorable to plaintiff, the evidence establishes that plaintiff was subjected to the following conditions at CSP: a "couple days" in solitary confinement upon arrival; access to the day hall at least four hours a day, seven days per week; more restricted opportunities for indoor exercise and phone usage as compared with SCF; deprivation of certain property items; total deprivation of outdoor exercise; and twenty-four-hour-a-day cell lighting. *See* Docket No. 111 at 4-5, ¶¶ 11-12; Docket No. 119 at 6, ¶¶ 15-20. It is also undisputed that plaintiff was not told how long he would remain at CSP until the morning of his transfer to Buena Vista Correctional Facility. *Id.* at 7, ¶ 21.

Even assuming plaintiff's conditions of confinement gave rise to a protected liberty interest, plaintiff has not shown that his rights were clearly established at the time of his transfer to CSP. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that lower courts may exercise their "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). Plaintiff cites four cases in opposition to defendants' qualified immunity defense: *Wilkinson v. Austin*, 545 U.S. 209 (2005); *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012); *Estate of DiMarco v. Wyoming Department of*

*Corrections*, 473 F.3d 1334 (10th Cir. 2007); and *Gaines v. Stenseng*, 292 F.3d 1222 (10th Cir. 2002). None of these cases would have put a reasonable prison official on notice that the conditions of confinement at CSP were sufficiently extreme that plaintiff's transfer to the facility without notice or a hearing would violate his procedural due process rights under the Fourteenth Amendment.

In *Wilkinson*, the Supreme Court held that inmates had a protected liberty interest in avoiding assignment to the Ohio State Penitentiary ("OSP"), Ohio's only Supermax facility. 545 U.S. at 220, 224. However, the conditions at OSP were far more onerous than those at issue in this case. As the Supreme Court noted, inmates at OSP were confined in a seven by fourteen foot cell for twenty-three hours a day, denied almost all human contact, and subjected to twenty-four-hour-a-day cell lighting. *Id.* at 214, 223-24. Placement at OSP also "disqualif[ed] an otherwise eligible inmate for parole consideration." *Id.* at 224. Here, by contrast, plaintiff was allowed to spend four hours a day, seven days a week, in the day hall where he had contact with other inmates, *see* Docket No. 111 at 4, ¶ 11; Docket No. 119 at 6, ¶ 20, and there is no evidence that plaintiff's placement as CSP disqualified him for parole consideration or otherwise increased the length of his confinement. *Wilkinson* is therefore materially distinguishable from this case.

The Tenth Circuit's decision in *Gaines* is likewise inapposite. There, the court reversed the sua sponte dismissal of the plaintiff's Fourteenth Amendment claim under 28 U.S.C. § 1915 on the ground that the district court had failed to analyze whether plaintiff's conditions of confinement in disciplinary segregation were "atypical and

significant" as compared with the conditions experienced by other inmates. 292 F.3d at 1226. The court did not decide whether the plaintiff's seventy-five day confinement implicated a protected liberty interest, but remanded the case to the district court to make that determination at a later stage of the litigation. *See id.* at 1226. Accordingly, *Gaines* would not have put a reasonable officer on notice that plaintiff had a protected liberty interest in avoiding transfer to CSP.

Finally, neither *DiMarco* nor *Rezaq* demonstrates a clearly established liberty interest in avoiding transfer to CSP because, in both cases, the Tenth Circuit concluded that the plaintiffs did not have a protected liberty interest in avoiding restrictive conditions of confinement. *See Estate of DiMarco*, 473 F.3d at 1344; *Rezaq*, 677 F.3d at 1016. In *Rezaq*, for example, the court held that the plaintiffs did not have a liberty interest in avoiding transfer to the ADX, where they were confined to eighty-seven square foot cells for twenty-three hours a day. *See Rezaq*, 677 F.3d at 1005, 1015-16.

Plaintiff does not cite any other cases to support the argument that his liberty interest in avoiding confinement at CSP was clearly established in 2015. However, the conclusion that such an interest was not clearly established is consistent with the authority from this Circuit holding that similar, if not more extreme, conditions of confinement do not give rise to a protected liberty interest. *See, e.g.*, *Grissom v. Roberts*, 902 F.3d 1162, 1170-71 (10th Cir. 2018) (holding that plaintiff had not cited any clearly established law showing a protected liberty interest in avoiding long-term solitary confinement); *McAdams v. Wyo. Dep't of Corrs.*, 561 F. App'x 718, 721-22 (10th Cir. 2014) (unpublished) (holding that conditions of confinement were not extreme

for purposes of determining whether plaintiff had a protected liberty interest where, for three years, plaintiff was confined to his cell for twenty-three hours a day, allowed one hour of recreation five days a week, restricted to non-contact visits, and subjected to lights on twenty-four hours a day); *Ajaj v. United States*, 293 F. App'x 575, 586 (10th Cir. 2008) (unpublished) (holding that "the law was not clearly established as to whether Plaintiff had a protected liberty interest in avoiding transfer to ADX in 2002"); *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 650 (10th Cir. 2006) (unpublished) (noting that, regardless of the baseline applied, the Tenth Circuit "has never held the conditions, duration or restrictions of the detentions presented on appeal created a liberty interest" (internal quotation marks omitted)); *Silverstein v. Fed. Bureau of Prisons*, No. 07-cv-02471-PAB-KMT, 2011 WL 4552540, at *12 (D. Colo. Sept. 30, 2011) (observing that "no court in the Tenth Circuit has held that the conditions at ADX, regardless of the unit, are extreme").  *But see Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (holding that "district court abused its discretion in concluding that there was no *arguable* basis that a three-year period of administrative segregation – during which time Fogle was confined to his cell for all but five hours each week and denied access to any outdoor recreation – is not 'atypical'"); *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 809 (10th Cir. 1999) (holding that district court erred in sua sponte dismissing plaintiff's Fourteenth Amendment claim where plaintiff was confined to his cell for twenty-three and one-half hours per day and there was no evidence in the record to contradict plaintiff's allegation that "no other inmates b[ore] similar restrictions").

The fact that plaintiff was not told how long he would remain at CSP does not preclude qualified immunity. Even if the indeterminacy of plaintiff's confinement at CSP weighed in his favor, Tenth Circuit case law is clear that no single *DiMarco* factor is dispositive, *see Rezaq*, 677 F.3d at 1012; *see also Marshall v. Ormand*, 572 F. App'x 659, 662 (10th Cir. 2014) (unpublished) (finding that the *DiMarco* factors did not show plaintiff's confinement in maximum security housing created a protected liberty interest, even though fourth *DiMarco* factor might have weighed in his favor), and plaintiff does not cite any cases finding a protected liberty interest based on circumstances similar to those presented here.[6]

As to the remaining *DiMarco* factor – whether plaintiff's placement at CSP related to or furthered a legitimate penological purpose – plaintiff makes no argument that this factor supports the existence of a protected liberty interest under clearly established law. Defendants presented evidence on summary judgment that plaintiff's transfer to CSP was part of a larger swap of MCU offenders after the abolishment of administrative segregation in the state prison system. *See* Docket No. 111 at 3-4, ¶¶ 4, 7-8; Docket No. 111-4 at 6-7, 51:16-56:21. Wesley Wilson, the Administrative Officer for Offender Services, testified that the move away from administrative segregation was followed by a reorganization of classification levels at SCF and CSP. *Id.* at 6, 51:16-52:25. SCF's mission changed from being a management control unit to being the

---

[6]The Tenth Circuit has suggested, albeit in an unpublished decision, that confinement for a period of over three years is not indicative of an indeterminate placement. *See McAdams*, 561 F. App'x at 722. While *McAdams* is not controlling, "an unpublished opinion can demonstrate that the law was *not* clearly established at the time the opinion was issued." *Grissom*, 902 F.3d at 1170.

maximum security facility for the state, resulting in a transfer of MCU offenders to CSP, "which became the new holding area for that custody level." *Id.* at 7, 53:1-54:7. Plaintiff notes that Mr. Wilson merely assumed "that Mr. Moore's transfer from [SCF] to [CSP] was part of a programmatic movement of Management Control Unit (MCU) inmates housed at SCF to CSP." Docket No. 119 at 2, ¶ 4. While it is true that Mr. Wilson initially stated he was making an assumption based on the fact that plaintiff's move to CSP occurred in the same time frame as the larger inmate transfer, Docket No. 111-4 at 7-8, 56:23-57:3, Mr. Wilson later testified that Mr. Moore's Executive Assignment Order ("EAO") indicated he was part of the SCF/CSP inmate swap previously discussed. Docket No. 119-1 at 29-30, 112:24-113:9; *see also* Docket No. 111-3 (February 24, 2015 EAO regarding Mr. Moore's transfer from SCF to CSP).

Plaintiff also points to testimony by defendant Little that there were regular SCF/CSP prisoner swaps intended to ensure "CSP MCU inmates access to outdoor exercise facilities at SCF." Docket No. 119 at 5, ¶ 7; Docket No. 119-2 at 12, 41:10-42:12. However, defendant Little testified that he did not know the reason for the particular swap that resulted in Mr. Moore's transfer to CSP. Docket No. 119-2 at 12, 42:13-43:4.

Even if defendant Little's testimony were sufficient to create a genuine dispute of fact as to the precise reason for Mr. Moore's transfer, plaintiff has made no showing that either of the two possible reasons supported by the record was unrelated to a legitimate penological interest under clearly established law. Indeed, whether the transfer was part of a reorganization of classification levels at the two facilities or an effort to give MCU offenders access to outdoor recreation, it would have furthered the

14

state's interest in ensuring the health and security of the inmate population. *Cf. Dunn v. White*, 880 F.2d 1188, 1196 n. 5 (10th Cir. 1989) (recognizing a "legitimate penological interest in the health and security of the inmate population").

Critically for purposes of the qualified immunity analysis, plaintiff provides no evidence or argument that Mr. Moore was transferred to CSP for a reason not relating to a legitimate penological purpose. *See Paulsen v. Booth*, No. 16-cv-00129-PAB-KMT, 2017 WL 1173487, at *4 (D. Colo. Mar. 29, 2017) (rejecting magistrate judge's recommendation to the extent that it "put the burden on defendants to show that plaintiff did not have a liberty interest" under the Fourteenth Amendment); *see also Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment." (internal citations and quotation marks omitted)). Upon consideration of the *DiMarco* factors and relevant authority from this Circuit, the Court therefore finds that plaintiff has failed to show a clearly established liberty interest in avoiding transfer to CSP. Defendant Little is entitled to qualified immunity on this claim.

## B.  Eighth Amendment Claim Against Defendant Roberts

Defendant Roberts also asserts qualified immunity with respect to plaintiff's Eighth Amendment claim. Docket No. 111 at 15-17. "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to

provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). To succeed on his Eighth Amendment conditions-of-confinement claim, plaintiff bears the burden of showing, first, that his conditions of confinement are sufficiently serious to give rise to a constitutional violation, *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 810 (10th Cir. 1999), and, second, that the defendant knew of and disregarded an excessive risk to plaintiff's health or safety. *Tafoya*, 516 F.3d at 916.

Plaintiff argues that his Eighth Amendment rights were violated when he was denied all outdoor exercise during the fourteen-month period that he was incarcerated at CSP. *See* Docket No. 119 at 12.[7] The Tenth Circuit has recognized that "total denial of exercise for an extended period of time would constitute cruel and unusual punishment." *Perkins*, 165 F.3d at 810 (internal quotation marks omitted).

The Tenth Circuit has recently decided two cases involving Eighth Amendment claims based on the denial of outdoor exercise. *See Apodaca v. Raemisch*, 864 F.3d 1071 (10th Cir. 2017), *cert denied*, 139 S. Ct. 5 (2018)*; Lowe v. Raemisch*, 864 F.3d

---

[7]The final pretrial order suggests that plaintiff's Eighth Amendment claim is broader than the denial of outdoor exercise. *See* Docket No. 114 at 2 ("Mr. Moore claims that, between February 2015 and January 2016, he was subjected to violations of his rights under the Eighth Amendment through deprivation of outdoor exercise, cell conditions of continual lighting through the night, limited telephone access, confiscation of his personal property, and 23-hour lockdown confinement . . . ."). In response to defendants' summary judgment motion, however, plaintiff makes no argument that his other conditions of confinement, either alone or in combination with the denial of outdoor exercise, are sufficient to support an Eighth Amendment claim. *See* Docket No. 119 at 12-16. The Court will therefore focus its Eighth Amendment analysis on the denial of outdoor exercise.

1205 (10th Cir. 2017), *cert denied*, 139 S. Ct. 5 (2018). In *Lowe*, the plaintiff asserted

that the defendants violated his Eighth Amendment rights by depriving him of all

outdoor exercise for a period of two years and one month between February 2013 and

March 2015. *See* 864 F.3d at 1208-09; *see also Lowe v. Raemisch*, No. 15-cv-01830-

RBJ, 2016 WL 4091175, at *1 (D. Colo. July 18, 2016) (discussing time period of

alleged deprivation of outdoor exercise), *rev'd, Lowe*, 864 F.3d 1205. Similarly, in

*Apodaca*, the plaintiff asserted a claim based on the denial of outdoor exercise for

eleventh months between May 2013 and April 2014. *See* 864 F.3d at 1074; *see also*

*Apodaca v. Raemisch*, No. 15-cv-00845-REB-MJW, 2015 WL 13215657, at *1 n.3 (D.

Colo. Oct. 30, 2015) (discussing time period of alleged deprivation of outdoor exercise),

*rev'd, Apodaca*, 864 F.3d 1071.[8] In both cases, the Tenth Circuit held that the

defendants were entitled to qualified immunity because the plaintiffs' Eighth

Amendment rights were not clearly established under existing precedent. *See*

*Apodaca*, 864 F.3d at 1078-79; *Lowe*, 864 F.3d at 1208-10. In reaching this holding in

*Lowe*, the court identified four conclusions "on the constitutionality of denying outdoor

---

[8]Although the alleged constitutional violations in *Lowe* and *Apodaca* preceded the deprivation at issue here, the Tenth Circuit's analysis of whether the rights at issue in those cases were clearly established indicates that the law in this area has remained unsettled. *See Lowe*, 864 F.3d at 1208-09 (noting that the Tenth Circuit has "reached four conclusions on the constitutionality of denying outdoor exercise to inmates," but has failed to define the precise circumstances in which the denial of outdoor exercise would constitute a violation of the Eighth Amendment); *Apodaca*, 864 F.3d at 1079 (noting that the Tenth Circuit "has not clearly established a right to outdoor exercise over an eleven-month period"). Moreover, plaintiff has not cited any authority – and the Court has found none – that would have changed the state of the law between the deprivations at issue in *Lowe* and *Apodaca* and the deprivation at issue in this case. Accordingly, the Tenth Circuit's decisions in *Lowe* and *Apodaca* control the analysis of defendant Roberts' qualified immunity defense.

exercise to inmates," which could be drawn from existing case law: (1) "[t]he denial of outdoor exercise could violate the Eighth Amendment under certain circumstances"; (2) "[t]he denial of outdoor exercise does not create a per se violation of the Eighth Amendment"; (3) "[r]estricting outdoor exercise to one hour per week does not violate the Eighth Amendment"; and (4) "[t]he denial of outdoor exercise for three years could arguably involve deliberate indifference to an inmate's health under the Eighth Amendment." *Lowe*, 864 F.3d at 1208-09. The court reasoned that "[t]hese conclusions permit[ted] reasonable debate on the constitutionality of disallowing outdoor exercise for two years and one month" and further noted that the Tenth Circuit had not defined the precise circumstances under which the denial of outdoor exercise would violate the Constitution. *Id.* at 1209. The deprivation alleged in this case is not materially distinguishable from the constitutional violations asserted in *Lowe* and *Apodaca*. Accordingly, for the reasons discussed in those cases, the Court finds that the denial of outdoor exercise for fourteen months did not violate plaintiff's clearly established rights under the Eighth Amendment.[9]

---

[9]The Court reached a different conclusion on this issue at the motion to dismiss stage, finding no clear error in the magistrate judge's determination that plaintiff's denial of all outdoor exercise between February 27, 2015 and January 14, 2016 violated his clearly established rights. *See* Docket No. 60; *see also* Docket No. 58 at 14-19 (report and recommendation). In finding plaintiff's rights clearly established, the magistrate judge relied on three Tenth Circuit cases: *Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006), *Perkins v. Kansas Department of Corrections*, 165 F.3d 803 (10th Cir. 1999), and *Ajaj v. United States*, 293 F. App'x 575 (10th Cir. 2008) (unpublished). The magistrate judge reasoned that, under these cases, plaintiff's allegations that "(1) his lights were on all night, (2) he had limited phone time, (3) ninety percent of his property was taken, (4) he was under daily twenty-three-hour lockdown, and (5) he received no outdoor exercise," were sufficient to state a plausible Eighth Amendment claim. Docket No. 58 at 18. The magistrate judge's recommendation and the Court's order adopting that recommendation do not mandate the same result on summary judgment. First,

Relying on the Tenth Circuit's endorsement of a "totality of circumstances" approach to Eighth Amendment claims, *see Lowe*, 864 F.3d at 1209 ("[T]he constitutional inquiry would depend on a case-by-case examination of the totality of circumstances."), plaintiff contends that there are several "unique factual elements that support Mr. Moore's contention that Defendant Roberts violated a clearly established constitutional right": (1) prison employees knew that "the abolishment of administrative segregation in 2014 was intended to help inmates by granting them more time out of cell"; (2) prison employees understood that the DOC's policy in 2015 and 2016 "was to provide inmates access to outdoor exercise"; (3) prison employees stopped keeping records of inmates' movements in and out of cells after administrative segregation was abolished; and (4) "Housing Supervisors at CSP did not monitor the length of time

_____

plaintiff's burden on summary judgment is different from his burden at the motion to dismiss stage. *See Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 868 n.6 (10th Cir. 2016) (indicating that, because discovery may change the "factual posture" of a case, a defendant is entitled to reassert the defense of qualified immunity on summary judgment even if the defense was denied at the motion to dismiss stage); *cf. Lowe*, 864 F.3d at 1210 (finding prior decision in *Fogle* not controlling as to constitutionality of alleged deprivation of outdoor exercise because *Fogle* applied a "frivolousness standard," under which "the issue is simply whether a point could even be argued" (internal quotation marks omitted)). Although the standard governing defendants' motion to dismiss required the magistrate judge to accept plaintiff's allegation that he was held in twenty-three-hour lockdown segregation for the duration of his confinement at CSP, *see* Docket No. 58 at 18, it is now clear that plaintiff was allowed to spend four hours a day, seven days a week, outside of his cell in the day hall. *See* Docket No. 111 at 4-5, ¶ 11. Second, the magistrate judge issued the report and recommendation before the Tenth Circuit's decisions in *Lowe* and *Apodaca*. While the magistrate judge interpreted *Perkins* as establishing that the denial of outdoor exercise for more than nine months is sufficient to support a claim under the Eighth Amendment, *see id.* at 810; *see also* Docket No. 58 at 15-16, the Tenth Circuit in *Apodaca* concluded that *Perkins* was subject to two possible interpretations and thus did not create clearly established law. *Apodaca*, 864 F.3d at 1077.

inmates stayed at CSP without access to outdoor exercise." Docket No. 119 at 15.

Plaintiff argues that, "[l]ike in *Fogle*," these facts "raise questions as to whether a fact

finder might conclude that the risk of harm from Mr. Moore's fourteen-month deprivation

of outdoor exercise is an obvious constitutional violation." *Id.* This argument is

unpersuasive.

*Fogle* is distinguishable from this case because it involved a substantially longer

deprivation of outdoor exercise than the deprivation alleged here. Moreover, the Tenth

Circuit in *Lowe* held that *Fogle* did not clearly establish a right not to be deprived of

outdoor exercise for a period exceeding two years. *See Lowe*, 864 F.3d at 1209. In

reaching that conclusion, the court determined that *Fogle* addressed the length of the

deprivation only with respect to "the issue of deliberate indifference, not the seriousness

of a prolonged denial of outdoor exercise," and thus "prison officials could reasonably

infer that the *Fogle* court had not decided whether a three-year ban on outdoor exercise

[was] sufficiently serious to violate the Eighth Amendment's objective prong." *Lowe*,

864 F.3d at 1209-10. The court further noted that *Fogle* was not determinative because

it had considered the constitutional issue under a "frivolousness" standard, *id.* at 1210;

*see also Fogle*, 435 F.3d at 1259 (reviewing whether Eighth Amendment claim had "an

arguable basis either in law or in fact" (internal quotation marks omitted)), which "asks

not what the law was, but whether it could even be argued that the law was not clearly

established." *Stewart v. Donges*, 915 F.2d 572, 583 n.14 (10th Cir. 1990).

The "unique factual elements" cited in plaintiff's response brief all pertain to the

subjective component of his Eighth Amendment claim, namely, whether defendant

Roberts consciously disregarded a risk to plaintiff's health or safety. *See* Docket No. 119 at 15. As in *Lowe*, however, defendants' summary judgment argument focuses on whether the denial of outdoor exercise for a period of fourteen months was sufficiently serious to trigger the protections of the Eighth Amendment under clearly established law. *See* Docket No. 111 at 15-17 (focusing on the severity of the alleged deprivation). *Lowe*, 864 F.3d at 1209. Because this inquiry implicates the objective component of plaintiff's Eighth Amendment claim, *Fogle* and the "unique factual elements" plaintiff cites are inapposite.

Plaintiff also suggests that defendant Roberts was aware of inmates' need for outdoor exercise based on the recent district court case, *Anderson v. Colorado*, 887 F. Supp. 2d 1133 (D. Colo. 2012), in which Judge R. Brooke Jackson ruled after a bench trial that the CDOC violated an inmate's Eighth Amendment rights by depriving him of outdoor exercise for a period of twelve years. *See id.* at 1141-42. In *Lowe* and *Apodaca*, however, the Tenth Circuit held that *Anderson* did not preclude the granting of qualified immunity because (1) the deprivation at issue in *Anderson* was significantly longer than the deprivations at issue in *Lowe* and *Apodaca*; (2) a district court's decision is not controlling law for purposes of determining whether a right is clearly established; and (3) the defendants' knowledge of the case was irrelevant to the "clearly established" inquiry, which asks only "whether it would have been clear to a *reasonable officer* that the alleged conduct was unlawful in the situation he confronted." *Lowe*, 864 F.3d at 1212 (internal quotation marks omitted) (emphasis added); *see also Apodaca*, 864 F.3d at 1079-80. *Lowe* and *Apodaca* therefore foreclose plaintiff's reliance on

*Anderson*.

Because plaintiff has failed to establish that the denial of outdoor exercise for a period of fourteen months was sufficiently serious to constitute a violation of plaintiff's clearly established rights under the Eighth Amendment, defendant Roberts is entitled to qualified immunity on this claim.[10]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 111] is **GRANTED**.  It is further

**ORDERED** that all other pending motions, including Docket Nos. 129, 135, 138, and 140, are **DENIED** as moot.  It is further

**ORDERED** that plaintiff's second amended complaint [Docket No. 27] is **DISMISSED** with prejudice.  It is further

**ORDERED** that the trial preparation conference set for January 25, 2019 and the three-day jury trial set for February 11, 2019 are vacated.  It is further

**ORDERED** that, within 14 days of the entry of this Order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

––––––––––––––––––––

[10]Given the Court's conclusion that plaintiff has not demonstrated a clearly established constitutional violation, the Court need not consider whether defendant Roberts was responsible for depriving plaintiff of outdoor exercise during his confinement at CSP.  *See* Docket No. 111 at 10-11.

DATED January 23, 2019.

BY THE COURT:

  s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge